**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

CONSERVATION LAW FOUNDATION, INC., et al.,

*Plaintiffs*,

v.

VORSTEVELD FARM, LLP,

*Defendant*.

Case No. 2:25-cv-00916-GWC

## PLAINTIFFS' MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES AND MEMORANDUM OF LAW IN SUPPORT

Plaintiffs ask the Court to strike six of Defendant's affirmative defenses as legally or factually insufficient pursuant to Federal Rule of Civil Procedure 12(f), which provides that the "court may strike from a pleading an insufficient defense[.]" Defendant pleads statute of limitations, laches, estoppel, waiver, permit shield/compliance, and lack of damages as defenses to Plaintiffs' federal Clean Water Act ("CWA") claims. Answer, p. 12, ECF No. 9. These affirmative defenses do not apply to Plaintiffs' citizen suit, are incompatible with Defendant's own admissions, or lack sufficient support from factual allegations to meet the Second Circuit's modified plausibility standard. *GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*, 918 F.3d 92, 97–99 (2d Cir. 2019); *Blow v. Univ. of Vermont & State Agric. Coll.*, 2021 WL 5903355, at \*2 (D. Vt. Oct. 22, 2021) ("The standard may be described as the now-familiar plausibility standard applicable to complaints modified by consideration of the timing and context of the answer."). Litigating these six affirmative defenses would waste this Court's and the parties' time.

Plaintiffs certify pursuant to Local Rule 7(a)(7) that they made a good faith effort to obtain Defendant's agreement to the requested relief before filing this motion.

1

## BACKGROUND

Plaintiffs Conservation Law Foundation, Inc., and Vermont Natural Resources Council brought this case against Vorsteveld Farm, LLP, under the CWA's citizen suit provision, 33 U.S.C. § 1365(a)(1). The CWA prohibits "any person" from discharging "any pollutant" from "any point source" to "navigable waters" unless authorized by a National Pollutant Discharge Elimination System ("NPDES") permit. 33 U.S.C. §§ 1311(a), 1342. Plaintiffs allege that Defendant is violating the CWA by discharging pesticides and other pollutants into Dead Creek, a tributary of Lake Champlain, from at least eleven outfall pipes without a NPDES permit. Compl., ¶¶ 3–4, ECF No. 1. Plaintiffs seek declaratory judgment, injunctive relief, and civil penalties. Compl., p. 18, ECF No. 1. Plaintiffs do not seek damages.

As required by the CWA, Plaintiffs sent Defendant notice of their claims and intent to sue on October 16, 2025. 33 U.S.C. § 1365(b)(1)(A); 40 C.F.R. §§ 135.2–.3. Plaintiffs filed their complaint on December 16, 2025. Defendant waived service on January 21, 2026. Defendant then served and filed its answer on February 12, 2026.

As required by Local Rule 7(a)(7), Plaintiffs attempted to obtain Defendant's agreement to the relief requested before filing this motion. On March 3, 2026, Plaintiffs shared a draft copy of this motion with Defendant's attorneys for their consideration. On March 5, 2026, Defendant concluded that it "will not be withdrawing the six affirmative defenses identified in [Plaintiffs'] motion. [Defendant] intends to amend [its] answer to add detail to support [its] defenses." E-mail from Miles M. Stafford, Esq., Monaghan Safar PLLC, to John C. Mason Overstreet, Senior Attorney, Conservation Law Foundation (Mar. 5, 2026). Plaintiffs proceeded to file this motion.

## ARGUMENT

Federal Rule of Civil Procedure 12(f) authorizes a court to "strike from a pleading an insufficient defense[.]" The test under Rule 12(f) to strike an affirmative defense in the Second

2

Circuit "may be described as the now-familiar plausibility standard applicable to complaints modified by consideration of the timing and context of the answer." *Blow*, 2021 WL at *2. An affirmative defense may consequently be struck as factually insufficient, legally insufficient, or unduly prejudicial. *GEOMC Co.*, 918 F.3d at 97–99.

First, an affirmative defense should be struck as factually insufficient if it fails the plausibility standard established by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *GEOMC Co.*, 918 F.3d at 98. Accordingly, an affirmative defense should usually be struck if it "contains nothing more than bald assertions, unaccompanied by supporting facts." *White v. Fein, Such & Crane, LLP*, 2018 WL 955903, at *1 (W.D.N.Y. Feb. 20, 2018); *see, e.g.*, *GEOMC Co.*, 918 F.3d at 99.

Evaluating the factual sufficiency of an affirmative defense is nonetheless a "context-specific task." *GEOMC Co.*, 918 F.3d at 98. A "relaxed application" of the plausibility standard may be appropriate if the facts required to plead an affirmative defense are not "readily known" to the defendant, *see id.* at 99, or if the defendant has "limited time" to respond to a complaint, *see Gaffney v. Crow LLP*, 2023 WL 4578221, at *3 (D. Vt. July 18, 2023). But if the facts are available and the time to respond is sufficient, then "threadbare recitals" and "mere conclusory statements" will not do. *Iqbal*, 556 U.S. at 663.

Second, an affirmative defense "should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *GEOMC Co.*, 918 F.3d at 98. There must be some "question of law" capable of allowing an affirmative defense to succeed for it to survive a motion to strike. *Id.* at 96.

And third, an affirmative may be struck "if its inclusion in the case is unduly prejudicial to the plaintiff." *Tal Dagan MD PC v. Resols. Billing & Consulting, Inc.*, No. 2024 WL 5089276, at *1 (S.D.N.Y. Dec. 12, 2024); *see GEOMC Co.*, 918 F.3d at 98–99.

Six of Defendant's affirmative defenses—statute of limitations, laches, estoppel, waiver, permit shield/compliance, and lack of damages—fail *GEOMC Co.* as factually insufficient, legally insufficient, or both. Defendant provides no more than "labels and conclusions," *see Twombly*, 550 U.S. at 555, "devoid of further factual enhancement," *see Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). Plaintiffs consequently ask this Court to strike Defendant's first, fourth, fifth, sixth, ninth, and tenth defenses.

## I.    DEFENDANT'S FIRST AFFIRMATIVE DEFENSE, STATUTE OF LIMITATIONS, SHOULD BE STRUCK BECAUSE PLAINTIFFS FILED THIS ACTION MORE THAN THREE YEARS BEFORE THE SATUTE OF LIMITATIONS EXPIRES.

The CWA itself does not establish a statute of limitations applicable to Plaintiffs' claims. Rather, the statute bars citizen suits brought pursuant to 33 U.S.C. § 1365(a)(1) for "wholly past violations" and requires Plaintiffs to "allege a state of either continuous or intermittent violation[.]" *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57–64 (1987). Courts accordingly apply the general, five-year statute of limitations established by 28 U.S.C. § 2462 for civil fine and penalty actions. *See Sackett v. Env't Prot. Agency*, 598 U.S. 651, 660 (2023); *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 451 F.3d 77, 88 n.14 (2d Cir. 2006).

Defendant's statute of limitations affirmative defense should be struck because Plaintiffs filed this action more than three years before 28 U.S.C. § 2462's five-year statute of limitations expires. None of the discharges that Plaintiffs allege occurred before April 25, 2024. Compl., ¶¶ 107–117, EFC No. 1. Plaintiffs filed their complaint on December 16, 2025, less than two

years later. *Id.* There is no question of law or fact that could vindicate Defendant's claim that a statute of limitations bars Plaintiffs' claims.

Defendant pleads no facts to support and offers no explanation for its defense. It just writes: "Statute of limitations." Answer, p. 13, ECF No. 9. In *GEOMC Co.*, the Second Circuit explained that "the facts needed to plead a statute-of-limitations defense will usually be readily available[.]" 918 F.3d at 98. Defendant is required to offer more than assertions if its statute of limitations defense is to be found plausible.

## II. DEFENDANT'S FOURTH AFFIRMATIVE DEFENSE, LACHES, SHOULD BE STRUCK BECAUSE LACHES DOES NOT APPLY TO ACTIONS FILED WITHIN THE APPLICABLE STATUTE OF LIMITATIONS.

Laches bars a plaintiff's claim "where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *Ikelionwu v. U.S.*, 150 F.3d 233, 237 (2d Cir. 1998) (internal quotation marks and citations omitted). The Second Circuit, however, has repeatedly explained that "[l]aches is not a defense to an action filed within the applicable statute of limitations[.]" *United States v. RePass*, 688 F.2d 154, 158 (2d Cir. 1982) (citing *United States v. Mack*, 295 U.S. 480, 489, (1935)); *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 260 (2d Cir. 1997); *United States v. Milstein*, 401 F.3d 53, 63 (2d Cir. 2005). This makes sense. Since statutes of limitations and laches address the same concerns, laches does not apply where a statute of limitations controls.

Defendant's laches defense, like its statute of limitations defense, should be struck because Plaintiffs filed this action more than three years before 28 U.S.C. § 2462's five-year statute of limitations expires. Compl., ¶¶ 107–117, EFC No. 1. Laches cannot bar Plaintiffs' action because its action is timely.

Even if laches applies to Plaintiffs' claims, Defendant's fourth defense is factually insufficient. Rather than plead facts to make its laches defense plausible, Defendant pleads only

"Laches." Answer, p. 13, ECF No. 9. But if Defendant's laches defense is plausible, then relevant facts must be readily known and available to Defendant. For example, if Defendant was prejudiced by Plaintiffs' alleged delay despite receiving Plaintiffs' sixty-day notice letter, then Defendant must know how. Answer, ¶ 10, EFC No. 9. Instead of explaining how, Defendant relies on a one-word assertion that falls well short of *GEOMC Co.*'s modified plausibility standard. Defendant's fourth affirmative defense should be struck.

### III.    DEFENDANT'S FIFTH AFFIRMATIVE DEFENSE, ESTOPPEL, SHOULD BE STRUCK BECAUSE DEFENDANT FAILS TO PLEAD ANY SUPPORTING FACTUAL ALLEGATIONS.

According to the Supreme Court, "the party claiming estoppel must have relied on its adversary's conduct in such a manner as to change his position for the worse." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984) (internal quotation marks omitted). A higher standard applies when estoppel is asserted against the government, because estoppel may undermine the public's interest "in obedience to the rule of law[.]" *Id.* at 60–61; *United States v. Boccanfuso*, 882 F.2d 666, 669 (2d Cir. 1989). Notably, "even greater reluctance should be exercised in allowing an estoppel defense in the [CWA] area as such contradicts the general notion of strict liability." *Connecticut Fund for Env't, Inc. v. Upjohn Co.*, 660 F. Supp. 1397, 1411 (D. Conn. 1987).

Defendant makes no attempt to plead factual allegations or to put forward a plausible affirmative defense capable of overcoming such significant reluctance. Instead, it again pleads one word: "Estoppel." Answer, p. 13, ECF No. 9. And, as with its other defenses, Defendant fails to plead factual allegations that must be readily known and available to it. For example, what did Plaintiffs do or represent that Defendant relied upon? Defendant does not say, even though it must know what it relied upon to its detriment. And how did Defendant detrimentally change its position based on its reliance? Again, Defendant does not say.

6

There is no reason for the Court to apply a relaxed pleading standard to Defendant's estoppel defense. In *Blow*, this Court denied a motion to strike an estoppel defense. 2021 WL at *3. The Court reasoned that the defendant, facing a potential class action, had "little access" to necessary information. *Id.* The defendant faced many potential class members who might have taken many different and relevant actions, and it was therefore "premature" to require "more specific allegations." *Id.*

By contrast, Plaintiffs' CWA citizen suit presents no comparable information problem. It involves only two plaintiffs—not a class whose identities or actions may be unknown to Defendant. Nor did Defendant lack adequate time to gather and plead relevant facts, having filed its answer thirty-two calendar days before the deadline. Answer, ECF No. 9; Wavier of Service of Summons, ECF No. 6; Fed. R. Civ. P. 4(d)(3) ("A defendant who . . . timely returns a waiver need not serve an answer to the complaint until 60 days after the request was sent[.]").

*GEOMC Co.* requires more than a one-word, fact-free assertion. Defendant's fifth defense should, therefore, be struck.

## IV.    DEFENDANT'S SIXTH AFFIRMATIVE DEFENSE, WAIVER, SHOULD BE STRUCK BECAUSE DEFENDANT FAILS TO PLEAD ANY SUPPORTING FACTUAL ALLEGATIONS.

The Second Circuit recently explained that "[w]aiver occurs when a litigant intentionally relinquishes a known right." *Carroll v. Trump*, 148 F.4th 110, 119 (2d Cir. 2025) (internal quotation marks and alterations omitted). In *Coach, Inc. v. Kmart Corps.*, the court explained: "There is no indication that Plaintiffs have intentionally relinquished any rights. Thus, there is no question of fact or law that might allow a waiver defense to succeed, and the defense is therefore insufficient as a matter of law." 756 F. Supp. 2d 421, 428 (S.D.N.Y. 2010).

Similarly, here, Defendant pleads no factual allegations to suggest what Plaintiffs might have done to waive their rights, nor does Defendant explain what rights Plaintiffs waived.

7

Defendant again pleads a one-word affirmative defense, and Plaintiffs are left to guess how a waiver defense would apply. Just like its estoppel defense, Defendant's waiver defense does not merit the application of a relaxed pleading standard. *Blow*'s "little access to information" problem does not apply. 2021 WL at *3 (evaluating a motion to strike a waiver defense). Nor did Defendant, who elected to answer thirty-two calendar days before the relevant deadline, have limited time to answer Plaintiffs' complaint. Defendant's waiver defense should be struck.

## V.    DEFENDANT'S NINTH AFFIRMATIVE DEFENSE, "PERMIT SHIELD/COMPLIANCE," SHOULD BE STRUCK BECAUSE DEFENDANT ADMITS THAT IT DOES NOT HAVE THE REQUISITE PERMIT.

Defendant admits that it does not have a NPDES permit that authorizes the discharges that Plaintiffs allege. Answer, ¶ 123, ECF No. 9. Defendant therefore lacks the type of permit capable of authorizing discharges that would otherwise violate the CWA. *See* 33 U.S.C. §§ 1311(a), 1342. This, by itself, renders Defendant's ninth affirmative defense legally and factually insufficient.

Defendant does allege earlier in its answer that it "operates under an LFO permit." Answer, ¶ 51, ECF No. 9. But Defendant's LFO permit—or "Large Farm Operation" permit— does not authorize discharges under the CWA.

First, Defendant's LFO permit is issued by Vermont's Agency of Agriculture, Food, and Markets ("AAFM"). 6 V.S.A. § 4851. AAFM has no authority to issue permits that authorize discharges that would otherwise violate the CWA. The U.S. Environmental Protection Agency ("EPA") delegated permitting authority under the CWA specifically to the Vermont Agency of Natural Resources ("ANR") pursuant to 33 U.S.C. § 1342(b) and 40 C.F.R. pt. 123. STATE NPDES MEMORANDUM FOR VERMONT, EPA, (May 7, 1992), https://www.epa.gov/compliance/ memorandum-agreements-between-epa-and-states-authorized-implement-national-pollutant. Vermont law consequently authorizes ANR to issue a "discharge permit" to a concentrated

animal feeding operation or a farm where appropriate. 10 V.S.A. § 1263. It further clarifies that AAFM's responsibilities do not extend to the CWA. 10 V.S.A. § 1259(i).

Second, LFO permits prohibit permittees from discharging in violation of the CWA. For example, a permittee must manage waste management structures "to assure that there are no direct discharges," contain leachate and milkhouse waste "in such a way as to prevent a discharge," spread compost on farmland "without causing a discharge," and manage mortalities "in such a way as to prevent a discharge[.]" 2-3 VT. CODE R. § 403:6(A)–(B). A permittee must also implement a site-specific nutrient management plan ("NMP") to ensure that farmland applications of manure, litter, and process wastewater do not cause a discharge. 2-3 VT. CODE R. § 403:6(F). Indeed, if AAFM discovers a discharge on a farm with an LFO permit, then AAFM must refer the matter to ANR, ensuring that ANR fulfills its delegated duty to monitor, control, and permit discharges under the CWA. MEMORANDUM OF UNDERSTANDING BETWEEN THE AGENCY OF AGRICULTURE, FOOD, AND MARKETS AND THE AGENCY OF NATURAL RESOURCES REGARDING IMPLEMENTATION AND ENFORCEMENT OF AGRICULTURAL WATER QUALITY PROGRAMS, §§ 5(A), 6 (Mar. 17, 2017), https://dec.vermont.gov/content/mou-between-aafm-and-anr-regarding-implementation-and-enforcement-agricultural-water-quality.

For these reasons, Defendant's LFO permit does not authorize the discharges that Plaintiffs allege. No question of fact or law could allow Defendant's affirmative defense to succeed based on its alleged LFO permit.

It may be, nonetheless, that Defendant's affirmative defense attempts to claim a regulatory exemption for certain precipitation-related discharges of land-applied manure, litter, or process wastewater based on the implementation of a site-specific NMP. *See* 40 C.F.R. § 122.23(e). Assuming, without conceding, the legal validity of such a defense in this case, this

9

would make some sense. Like the proponent of an affirmative defense, the proponent of an exemption to the CWA's broad permitting requirements carries the burden of proving that the exemption applies. *N. California River Watch v. City of Healdsburg*, 496 F.3d 993, 1001 (9th Cir. 2007); *Pac. Coast Fed'n of Fishermen's Associations v. Glaser*, 945 F.3d 1076, 1083 (9th Cir. 2019); *Na Kia'i Kai v. Nakatani*, 401 F. Supp. 3d 1097, 1107 (D. Haw. 2019). And Defendant's LFO permit requires it to implement an NMP. 2-3 Vt. Code R. § 403:6(F).

If this is Defendant's intent, the factual allegations required to make such an affirmative defense plausible are nowhere to be found. For example, Defendant does not allege compliance with a site-specific NMP, the underlying requirement to qualify for the relevant regulatory exemption. 40 C.F.R. § 122.23(e). Such compliance would be readily known to Defendant. Its LFO permit requires it both to maintain an NMP and to maintain records that document the implementation of its NMP "for a period of no less than 5 years[.]" 2-3 Vt. Code R. §§ 403:6(F)(2), 403:7.

Having failed to plead any supporting facts at all, Defendant's ninth defense should be struck as implausible.

## VI. DEFENDANT'S TENTH AFFIRMATIVE DEFENSE, LACK OF DAMAGES, SHOULD BE STRUCK BECAUSE PLAINTIFFS ARE NOT REQUIRED TO PROVE DAMAGES.

Defendant's "lack of damages" defense should be struck because Plaintiffs do not need to prove damages to prevail on their claims. To establish that Defendant violated the CWA, Plaintiffs must show that Defendant added a pollutant to navigable waters from a point source without a NPDES permit applicable to the point source. 33 U.S.C. §§ 1311(a), 1342. Damages are not a required element of Plaintiffs' claims. In fact, the CWA does not authorize the award of damages in a citizen suit brought to enforce an effluent standard or limitation. *See Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 (1981). A court may "apply any

appropriate civil penalties under [33 U.S.C. § 1319(d)]" and "may award costs of litigation (including reasonable attorney and expert witness fees)[.]" 33 U.S.C § 1365(a), (d). Defendant's tenth affirmative defense is, consequently, legally inapplicable.

## CONCLUSION

For the reasons set forth above, Defendant's first, fourth, fifth, sixth, ninth, and tenth defenses should be struck.

Dated: March 5, 2026

Respectfully submitted,

CONSERVATION LAW FOUNDATION, INC.

/s/ Mason Overstreet
John C. Mason Overstreet, VT Bar No. 5711
R. Scott Sanderson, VT Bar No. 6369
Heather A. Govern (pro hac vice)
Karl S. Coplan (pro hac vice)
15 East State Street, Suite 4
Montpelier, VT 05602
moverstreet@clf.org
(802) 622-3010

VERMONT NATURAL RESOURCES COUNCIL

/s/ Jon Groveman
Jon Groveman, VT Bar No. 3176
11 Baldwin Street
Montpelier, VT 05602
jgroveman@vnrc.org
(802) 249-7736

ATTORNEYS FOR PLAINTIFFS